# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50017 | **DATE** | 11/2/2011 |
| **CASE TITLE** | Paloian v. Federal Deposit Insurance Corporation | | |

**DOCKET ENTRY TEXT:**

Defendant's motion to dismiss [16] is granted. This case is closed.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff, Gus A. Paloian, as chapter 7 trustee for the bankruptcy estate of Canopy Financial, Inc., filed a four-count complaint against defendant Federal Deposit Insurance Corporation, as receiver for Amcore Bank, N.A., alleging: (1) breach of fiduciary duty; (2) breach of contract; (3) negligence; and (4) breach of the Illinois Fiduciary Obligations Act, 760 ILCS 65/0.01, et seq. ("FOA"). Now before the court is defendant's motion to dismiss. For the following reasons, defendant's motion is granted.

### I. BACKGROUND

### A. General Allegations

Plaintiff is the chapter 7 bankruptcy trustee for Canopy, a Delaware corporation headquartered in Chicago, Illinois that is the debtor in a chapter 7 case, Case No. 09-44943, pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). Defendant is a federal government agency headquartered in Washington, D.C. that is the receiver for Amcore pursuant to 12 U.S.C. § 1821. Amcore is a national banking association headquartered in Rockford, Illinois. On April 23, 2010, Amcore was closed by the Office of the Comptroller of the Currency, at which time defendant was appointed as receiver for Amcore.

Plaintiff alleges the following facts. Prior to filing for bankruptcy, Canopy maintained several bank accounts with Amcore, including account no. 9801815038, entitled "Canopy Financial, Inc. Custodial Account" (the "HSA Custodial Account") that held segregated funds relating to health savings accounts ("HSAs") of employees of Canopy's customers. Amcore did not prevent two former officers of Canopy, Jeremy Blackburn and Anthony Banas, from systematically stealing at least $3,477,480.30 from the HSA Custodial Account for their own personal benefit. Amcore may have deliberately failed or refused to properly investigate the improper account activity to avoid obtaining additional information regarding the fraud.

During 2008 and 2009, Blackburn and Banas caused tens of millions of dollars to be transferred from Canopy to themselves or third parties, and used those funds to acquire goods and services for themselves, including sports cars, jewelry, aircraft, residences, meals, entertainment, and other items that did not benefit

# STATEMENT

Canopy. Blackburn and Banas created and altered Canopy financial statements and other documents that overstated Canopy's assets and failed to reflect numerous liabilities to creditors. They failed to segregate funds that were supposed to be held in customer accounts for the benefit of individuals whose HSAs were being serviced by Canopy. Banas and Blackburn also provided forged documents to investors, falsified Canopy's monthly operating reports and other financial records, and lied about the number of Canopy's customers, the magnitude of Canopy's growth and Canopy's bank balances.

Canopy was insolvent no later than June 30, 2008 as a result of the theft of Canopy assets, the failure to reflect numerous liabilities to creditors on Canopy's books and records, and the overstatement of Canopy's assets. On November 25, 2009, Canopy commenced a chapter 11 bankruptcy proceeding in the Bankruptcy Court. On November 30, 2009, the Securities and Exchange Commission filed a three-count complaint against Blackburn, alleging securities fraud and the United States Attorney for the Northern District of Illinois charged Blackburn with wire fraud in a criminal complaint. On December 30, 2009, Canopy's chapter 11 bankruptcy case was converted to a chapter 7 bankruptcy case, and plaintiff was appointed as chapter 7 trustee of Canopy's estate. On March 1, 2010, the United States Attorney for the Northern District of Illinois charged Blackburn and Banas with two counts of wire fraud. On March 26, 2010, plaintiff filed an adversary complaint in the Bankruptcy Court against Blackburn and Banas. Final judgment was entered against each of Blackburn and Banas in the amount of $93,125,924.46.

## B. The HSA Custodial Account

Canopy accepted and held its customers' HSA funds and deposited them into custodial bank accounts, including the HSA Custodial Account maintained at Amcore. Amore was aware (1) that Canopy was in the business of managing HSAs for individual account beneficiaries; (2) that the HSA Custodial Account was specifically designated as a "custodial account"; (3) that individual account beneficiaries would utilize funds in the HSA Custodial Account to pay qualified medical expenses through the use of debit cards, which Amcore was involved in processing; (4) that Amcore received electronic deposits into the HSA Custodial Account of funds of individual account beneficiaries; and (5) that Amcore Financial, Inc., the holding company for Amcore, was identified by IRS Forms 5498-SA as the trustee for individual account beneficiaries' HSA funds. With this knowledge, Amcore agreed to serve as custodian for the HSA Custodial Account, which gave rise to various fiduciary duties and contractual obligations on behalf of Amcore, including a duty and obligation to avoid and prevent the misappropriation or other improper use of funds from the HSA Custodial Account for improper and non-healthcare related payments.

## C. Improper Transfers from the HSA Custodial Account

Between approximately January 2007 and November 2009, Blackburn and Banas caused Canopy to make numerous improper transfers out of the HSA Custodial Account to non-custodial accounts maintained by Canopy at Amcore (the "Non-Custodial Accounts"), as well as to accounts at Fifth Third Bank and JP Morgan Chase Bank. Plaintiff contends that Amcore knew or should have known that given the special purpose of the HSA Custodial Account, no transfers into or out of the account other than receiving funds from Canopy's customers and facilitating payment of qualified health care expenses of the customers to health care providers would be appropriate or allowed. Whereas transfers by HSA account holders from the HSA Custodial Account to pay qualified medical expenses were typically in small and irregular amounts, the improper transfers made by Blackburn and Banas were in large, round amounts.

## D. Amcore's Monitoring of the Accounts

Amcore established certain monitoring or other control features with respect to one of the Non-Custodial Accounts (the "Amcore Operating Account") that would automatically alert Amcore personnel if activity in that account deviated from certain defined parameters. Internal reports produced by Amcore (the "Alert Review Reports") reflect that internal alerts were generated by Amcore on numerous occasions between May 2007 and

| STATEMENT |
|---|

April 2009 related to certain activity in the Amcore Operating Account. Amcore personnel examined those alerts and concluded that the account activity in question was not suspicious and so did not warrant forwarding the alerts to Amcore's investigation unit. Plaintiff contends that Amcore deliberately failed or refused to investigate the suspect transactions because it feared what it might uncover. There is no evidence to indicate whether Amcore established monitoring or other control features for the HSA Custodial Account. Plaintiff asserts that Amcore breached its duties and obligations to Canopy to prevent misappropriation or other improper use of funds from that account either by failing to establish such features, or by failing to investigate alerts when they arose.

### E. Applicable Law

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 1950. A motion to dismiss will be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir. 1993).

On a motion to dismiss, the court is confined to considering only the well-pleaded allegations of the complaint. Rosenblum v. Travelbyus.com Ltd., 229 F.3d 657, 661 (7th Cir. 2002). Documents attached to a motion to dismiss, however, may be considered "if they are referred to in the plaintiff's complaint and are central to his claim." Id.

### II. DISCUSSION

### A. Count I: Breach of Fiduciary Duty

Plaintiff alleges that as custodian for the HSA Custodial Account, Amcore owed a duty of loyalty to Canopy and a duty to act with due care and to deal honestly and fairly with Canopy, including a duty to prevent the misappropriation of funds from the HSA Custodial Account. Plaintiff further alleges that Amcore breached this duty by failing to discover, investigate, prevent, remedy and/or disclose the misappropriation of HSA Custodial Account funds by Blackburn and Banas when one or more agents, officers and/or employees of Amcore knew or should have known of the misappropriation.

In its motion to dismiss, defendant requests that Count I be dismissed with prejudice for three reasons: (1) the complaint alleges that Amcore's parent company acted as the HSA trustee, eliminating the possibility that Amcore acted as the HSA custodian; (2) even if Amcore were the custodian, HSA custodians do not owe fiduciary or other duties; (3) even if Amcore was the custodian, and even if it did owe a fiduciary duty, that fiduciary duty would flow to the individual beneficiaries, and not to Canopy.

With respect to defendant's first reason, the court finds that plaintiff has satisfactorily alleged that Amcore was a custodian for the HSA Custodial Account under Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007). It is not necessary, as defendant suggests, for plaintiff to attach to the complaint a contract between Canopy and Amcore evidencing the establishment of a custodial relationship in order to survive a motion to dismiss. Quantum Color Graphics, LLC v. The Fan Assoc. Event Photo GMBH, 185 F. Supp. 2d 897, 905-06 (N.D. Ill. 2002)("Although Fed. R. Civ. P. 10(c) permits a plaintiff to attach a contract to the complaint, nothing in the Federal Rules requires a plaintiff to do so."). Indeed, the Seventh Circuit has held

that "[e]ven after Twombly, the federal notice-pleading standard requires that a plaintiff provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests . . . ." Reger Dev., LLC v. Nat'l City Bank, 592 F.3d 759, 764 (7th Cir. 2010). Plaintiff's allegation that Amcore and Canopy entered into one or more agreements, whether written, oral and/or by operation of law, under which Amcore agreed to serve as custodian of the HSA Custodial Account, gives defendant fair notice of what plaintiff's claim is and the grounds upon which it rests.

The court declines to convert defendant's motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) in order to consider certain account documents attached to the motion to dismiss. The court further finds that these documents do not fit into an exception to Rule 12(d) because plaintiff's complaint does not reference, nor does it rely upon these documents, and because plaintiff contests their authenticity. With respect to defendant's contention that the complaint identifies Amcore's holding company as the custodian of the HSA Custodial Account, the court notes that the complaint does not allege that Amcore Financial, Inc. was the account custodian, but rather that Amcore Financial, Inc. was designated as such on IRS Forms 5498-SA. The court finds plaintiff's argument in its opposition to the motion to dismiss persuasive that it is possible that Amcore Financial, Inc. was incorrectly designated as a trustee on IRS forms instead of Amcore because Amcore Financial, Inc. was not a bank, but a bank holding company. Thus, there exists a plausible claim that Amcore, as opposed to Amcore Financial, Inc., was the custodian of the HSA Custodial Account.

With respect to its second reason, defendant argues that HSA custodians are not fiduciaries. Plaintiff suggests that even if there was no definitive custodial agreement between the parties, a fiduciary relationship arose when Amcore voluntarily undertook fiduciary responsibilities with respect to the HSA Custodial Account.

Under Illinois law, banks generally owe no fiduciary duty to their depositors because the relationship among the parties is no more than "an arms-length transaction between debtor and creditor." Miller v. Am. Nat'l Bank & Trust Co., 4 F.3d 518, 520 (7th Cir. 1993). Illinois law does recognize, however, that the particular circumstances surrounding a given relationship may generate fiduciary responsibilities. Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1119 (7th Cir. 1992). Specifically, "[t]he essence of a fiduciary relationship is that one party is dominated by the other" and the dominant party has accepted the trust of the other party. Id. Accordingly, to establish the existence of a fiduciary relationship, a party must show that it "placed trust and confidence" in the dominant party, and that the latter "gained influence and superiority" over it. Id. Such a relationship must be shown "by proof so clear and convincing, so strong, unequivocal, and unmistaken that it leads to only one conclusion." Carey Elec. Contracting, Inc. v. First Nat'l Bank, 74 Ill. App. 3d 233, 236 (1979).

Here, plaintiff fails to meet that standard. Plaintiff has failed to show that Canopy was subject to dominion and influence on the part of Amcore. See Johnson v. Edwardsville Nat'l Bank & Trust Co., 229 Ill. App. 3d 835 (1992) (Courts will not find a fiduciary relationship to exist between bank and its depositor unless a showing is made that depositor was subject to domination and influence on part of bank). See also Obras Civiles, S.A. v. ADM Secs., Inc., 32 F. Supp. 2d 1018, 1024 (N.D. Ill. 1999) (Finding no fiduciary relationship between bank and depositor where depositor "presented no facts to suggest that it reposed any trust on [bank] which resulted in [bank] having any superiority or influence over [depositor] . . . ."). In the absence of dominance and influence, there is no fiduciary relationship between the parties, no matter what the level of trust Canopy placed in Amcore. Further, plaintiff has failed to state a plausible claim that a "de facto" fiduciary relationship arose between the parties by virtue of the fact that the HSA Custodial Account was a custodial account.[1] Therefore, because plaintiff cannot establish an essential element of his claim for breach of fiduciary duty, defendant's motion to dismiss with respect to plaintiff's breach of fiduciary duty claim is granted.

Because the court has found that Amcore is not a fiduciary, the court need not reach defendant's third reason. However, even if the court found that Amcore were a fiduciary, the court is persuaded that any fiduciary duties owed by Amcore would be owed to the individual account beneficiaries, such that Canopy would not have standing to sue Amcore for breach of fiduciary duty. 26 U.S.C. § 223(d) defines a health savings account as a trust. It is clear that under Illinois law, trustees owe fiduciary duties only to the beneficiaries of the trust. Green v. First Nat'l Bank of Chi., 162 Ill. App. 3d 914, 920 (1987). Only the beneficiaries of a trust would, therefore, have standing to sue for a breach of fiduciary duty. Regnery v. Regnery, 2010 WL 3894052, at *3 (N.D. Ill. Sept. 28, 2010) (granting judgment on the pleadings where plaintiffs were not beneficiaries of the trust and so lacked standing to sue for breach of fiduciary duty). As such, Canopy would not have standing to sue Amcore for a breach of fiduciary duty with respect to the HSA Custodial Account even if Amcore were a fiduciary of that account, and so the court could grant defendant's motion to dismiss with respect to plaintiff's breach of fiduciary duty claim on that basis.

### B. Count II: Breach of Contract

Plaintiff alleges that, on information and belief, Canopy and Amcore entered into one or more agreements, whether written, oral and/or by operation of law, establishing, governing and/or otherwise relating to the HSA Custodial Account. Amcore agreed to serve as custodian of the HSA Custodial Account and to act with due care with respect to all transactions related to the HSA Custodial Account, including a duty to prevent the misappropriation of funds from the account. Plaintiff argues that Amcore breached its obligations under its agreement(s) with Canopy to act with due care by, among other things, failing or refusing to take action to discover, investigate, prevent, remedy and/or disclose the misappropriation of the funds from the HSA Custodial Account by Blackburn and Banas, whereas Canopy has performed all of its material obligations under such agreement(s).

In its motion to dismiss, defendant requests that Count II be dismissed because (1) plaintiff failed to allege any facts showing the existence of a contractual duty that was breached; and (2) any claim for breach of an implied contract is barred by Article 4A of the Illinois Uniform Commercial Code, 810 ILCS 5/ et seq. ("UCC").

While defendant does not raise the issue, Judge Pallmeyer has recently held that the FOA bars a claim for breach of contract absent a showing of knowledge or bad faith. Crawford Supply Grp. v. Bank of Am., N.A., 09 C 2513, 2011 WL 1131292, at *11. As discussed in further detail in the court's analysis of Count IV below, plaintiff has failed to show that Amcore had actual knowledge of, or acted in bad faith in failing to properly investigate, the misappropriations by Blackburn and Banas. Consequently, plaintiff's claim for breach of contract is barred by the FOA and is therefore dismissed.

### C. Count III: Negligence

Plaintiff contends that as custodian for the HSA Custodial Account, Amcore owed a duty to Canopy to act with reasonable care with respect thereto, including a duty to avoid and prevent the misappropriation of funds from the HSA Custodial Account. Plaintiff argues that Amcore acted negligently and breached its duty of reasonable care to Canopy by, among other things, failing or refusing to take action to discover, investigate, prevent, remedy and/or disclose the misappropriation of funds from the HSA Custodial Account by Blackburn and Banas.

In its motion to dismiss, defendant requests that Count III be dismissed with prejudice because it (1) is precluded by the FOA; (2) is barred by Article 4A of the UCC; (3) is barred by the economic loss doctrine; and (4) fails to allege the existence of a duty that was breached.

Illinois courts have found that the FOA "relieves banks of liability for negligence and serves as a defense against allegations of negligence." Time Savers, Inc. v. LaSalle Bank, N.A., 371 Ill. App. 3d 759,

| STATEMENT |
|---|

768 (2007). Indeed, the FOA provides that a bank acts "in good faith" within the meaning of the Act when it acts honestly, even when it acts negligently. 760 ILCS 65/1(2). Thus, a bank which successfully asserts a defense under the FOA cannot be liable for negligence in its dealings with a fiduciary. As described in further detail in the following section, defendant has successfully stated a defense on behalf of Amcore under the FOA. As such, Amcore cannot be liable for negligence and plaintiff's negligence claim is therefore dismissed.

### D. Count IV: Breach of the Illinois Fiduciary Obligations Act, 760 ILCS 65/0.01, et seq.

Plaintiff alleges that one or more agents, officers and/or employees of Amcore knew that Blackburn and Banas were fiduciaries of Canopy and had actual knowledge of and/or acted in bad faith with respect to investigating the misappropriation of HSA Custodial Account funds by Blackburn and Banas, in violation of the FOA.

In its motion to dismiss, defendant contends that the complaint does not sufficiently allege that Amcore had actual knowledge of or acted in bad faith with respect to the misappropriation of funds. Specifically, defendant claims that plaintiff has failed to plead that Amcore had actual knowledge of the fraud "at the moment of the transaction." Time Savers, Inc. v. LaSalle Bank, 371 Ill. App. 3d 759, 768 (2007).

The FOA governs a financial institution's liability for participation in a breach of fiduciary duty by a third party. 760 ILCS 65/1 et seq.. Section 8 of the FOA provides that a bank does not have an obligation to inquire whether a fiduciary is committing a breach when it permits a fiduciary to make withdrawals, unless "the bank ha[d] actual knowledge of the fiduciary's misappropriation" or "knowledge of sufficient facts that its action in paying the checks amount[ed] to bad faith." Geimer v. Bank of Am., N.A., 784 F. Supp. 2d 926, 932 (N.D. Ill. 2011). See also Appley v. West, 832 F.2d 1021, 1031 (7th Cir. 1987) (discussing the Uniform Fiduciaries Act, which was adopted in Illinois and codified as the FOA at 760 ILCS 65/1 et seq.).

The court notes that there is an apparent disparity in the case law regarding whether the FOA creates a cause of action or merely provides an affirmative defense. The Seventh Circuit has suggested that the Uniform Fiduciaries Act, the predecessor statute to the FOA, "did not create the cause of action . . . [but rather] is a defense to such an action," Appley v. West, 832 F.2d 1021, 1031 (7th Cir. 1987). Illinois state courts have suggested, however, even subsequent to Appley, that the FOA establishes an independent claim for relief. See, e.g., Time Savers, Inc. v. LaSalle Bank, 371 Ill. App. 3d 759, 768 (2007), Continental Cas. Co. v. American Nat'l Bank, 385 Ill. App. 3d 687, 697 (2008). Here, the court declines to rule on whether the FOA creates an independent cause of action, but finds that even if it does, plaintiff has not alleged facts sufficient to support a claim for relief thereunder.

Here, plaintiff has not alleged with sufficient specificity that Amcore had actual knowledge of the misappropriation of HSA Custodial Account funds by Blackburn and Banas. Plaintiff claims (1) that the sizes of the improper transfers were per se alarming, such that they should have put Amcore on notice of the fraud; and (2) that the Alert Review Reports indicated the presence of suspicious activity that should have been further investigated. However, what Amcore should have known is not relevant to the FOA inquiry. As a matter of Illinois law, "mere suspicious circumstances are not enough to require the bank to inquire into the fiduciary's actions." Johnson v. Citizens Nat'l Bank, 30 Ill. App. 1066, 1072 (1975). Indeed, Illinois courts have recognized that there are "many legitimate reasons why an agent and principal might engage in odd checking practices." Id. Plaintiff has not sufficiently alleged that Amcore had actual knowledge of the fraud at the time it occurred. In fact, the Alert Review Reports show that Amcore representatives did review certain of the fraudulent transactions and determined that no further investigation was necessary. Accordingly, the court finds that plaintiff's allegations have failed to raise his right to relief above a speculative level as to this aspect of his FOA claim.

Plaintiff's contention, based on the same facts, that Amcore acted in bad faith is also insufficiently

| STATEMENT |
|---|

supported in the complaint. While the FOA does not define "bad faith," it defines "good faith" by stating that "[a] thing is done in good faith . . . when it is in fact done honestly, whether it be done negligently or not." 760 ILCS 65/1. Illinois courts have explained that bad faith includes situations "where the bank suspects the fiduciary is acting improperly and deliberately refrains from investigating in order that [the bank] may avoid knowledge that the fiduciary is acting improperly. Mikrut v. First Bank of Oak Park, 359 Ill. App. 3d 37, 50 (2005). The Seventh Circuit has held that in determining whether a bank has acted in bad faith, courts should consider whether it is "commercially unjustifiable for the payee to disregard and refuse to learn facts [that are] readily available." Appley, 832 F.2d at 1031 (7th Cir. 1987). Here, the facts plaintiff alleges do not indicate "obvious circumstances" that became so "cogent" that Amcore acted in bad faith in failing to further investigate them. Id. In Falk v. Northern Trust Co., for example, the Appellate Court of Illinois found that a principal sufficiently alleged bad faith where a bookkeeper embezzled roughly $2,000,000 from her employer by transferring funds from employer's account to her own account at the bank and the bank had reviewed the bookkeeper's tax returns and other personal statements and was aware that the bookkeeper had insufficient income to support the account and loan activity she was generating. 327 Ill. App. 3d 101, 103-04 (2001).

Even construing the allegations of the complaint in the light most favorable to plaintiff, plaintiff has not alleged the kind of "obvious circumstances" required to show that Amcore acted in bad faith in failing to investigate them. Plaintiff does not allege that Amcore had any knowledge of Blackburn and Banas' personal finances or any reason to believe that they were living a lifestyle unsupported by their legitimate income. Rather, the allegations made by plaintiff, that Amcore should have further investigated the fraudulent transfers because the sizes of the improper transfers were per se alarming and that Amcore exercised bad faith in failing to do so, do not rise to the necessary level of factual specificity and indicate such obvious circumstances to establish a plausible claim that Amcore acted in bad faith. Plaintiff's FOA claim is therefore dismissed.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted.

---

1. In support of its contention, plaintiff cites a case from the Central District of California, in which that court suggested that under California law, a fiduciary relationship may arise between a bank and a depositor where funds are deposited in a custodial account. The court declines to follow this case and instead follows the robust body of Illinois case law indicating that a fiduciary relationship does not exist between a bank and a depositor where the depositor has not alleged that it was under the domination and control of the bank.